**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Doe v. Columbus*, Slip Opinion No. 2026-Ohio-1095.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1095

DOE ET AL., APPELLEES, *v.* THE CITY OF COLUMBUS ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Doe v. Columbus*, Slip Opinion No. 2026-Ohio-1095.]**

*Appellate jurisdiction—R.C. 2505.02(B)(4)—Under R.C. 2505.02(B)(4), the State of Ohio and its municipalities may immediately appeal orders preliminarily enjoining the enforcement of their duly enacted laws—The State and its municipalities have a sovereign interest in passing and enforcing their duly enacted laws, and a court's order enjoining operation of such laws causes irreparable injury to that sovereign interest—Court of appeals' judgment dismissing municipality's appeal on grounds that trial court's preliminary-injunction order was not a final order that could be immediately appealed reversed.*

(No. 2024-0056—Submitted March 11, 2025—Decided April 1, 2026.)

APPEAL from the Court of Appeals for Delaware County, No. 23CAE040028.

————————————

HAWKINS, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DETERS, and SHANAHAN, JJ., joined. FISCHER, J., dissented. BRUNNER, J., dissented, with an opinion.

**HAWKINS, J.**

{¶ 1} This case presents the question whether the State of Ohio and its municipalities may immediately appeal orders preliminarily enjoining the enforcement of their duly enacted laws. In December 2022 and February 2023, the Columbus City Council passed a total of two ordinances relating to firearms. Appellees, five anonymous persons from Franklin County and one anonymous person from Delaware County (collectively, "the Does"), sued appellants, the City of Columbus, Columbus City Council President Shannon Hardin, and Columbus City Attorney Zach Klein (collectively, "the city"), challenging the constitutionality of portions of the ordinances that restricted the magazine capacity and storage of firearms. The trial court sided with the Does and issued a preliminary injunction, thereby barring the city from enforcing certain provisions of the Columbus City Code ("C.C.C.") that were amended or enacted by the ordinances. The city appealed. The court of appeals, however, dismissed the city's appeal on the grounds that the trial court's preliminary-injunction order was not a final order that could be immediately appealed. We disagree with the court of appeals' judgment.

{¶ 2} The State and its municipalities have a sovereign interest in passing and enforcing their duly enacted laws, and a court's order enjoining the operation of such laws causes irreparable injury to that sovereign interest. Such an injunction, therefore, constitutes a final order that can be immediately appealed under R.C. 2505.02(B)(4). Because the Fifth District Court of Appeals found otherwise, we reverse its judgment dismissing the city's appeal and remand this matter to that court for it to address the merits of the city's appeal.

## I. Background

{¶ 3} On December 5, 2022, the Columbus City Council passed Ordinance No. 3176-2022, which amended, enacted, or repealed multiple provisions of the C.C.C. relating to firearms. The ordinance became law when it was signed by the mayor of Columbus on December 6.

{¶ 4} Among the newly enacted provisions, C.C.C. 2323.32(A) prohibits a person from knowingly possessing, purchasing, keeping for sale, offering or exposing for sale, transferring, distributing, or importing a "large capacity magazine," which the C.C.C. defines as a magazine and other similar device that has the capacity to accept "thirty (30) or more rounds of ammunition for use in a firearm," C.C.C. 2323.11(N). C.C.C. 2323.191(A)(1) prohibits "negligent storage of a firearm" at a person's residence when the person "knows or reasonably should know a minor is able to gain access to the firearm." The negligent-storage provision contains an exception for a person who keeps a firearm in "safe storage," C.C.C. 2323.191(A)(2)(a), which is defined in C.C.C. 2323.11(O).[1]

{¶ 5} On February 27, 2023, the city council passed Ordinance No. 0680-2023, which amended the language of the magazine-capacity restriction and conferred immunity from prosecution until July 1, 2023, on persons who lawfully acquired or possessed prohibited large-capacity magazines prior to December 5, 2022.

{¶ 6} In March 2023, the Does filed an amended complaint against the city in the Delaware County Court of Common Pleas, alleging, among other claims, that

---

1. C.C.C. 2323.11(O) defines "safe storage" as

> (1) a device that, when installed on a firearm, is designed to prevent the firearm from being operated without first deactivating the device; (2) a device incorporated into the design of the firearm that is designed to prevent the operation of the firearm by anyone not having access to the device; or (3) a safe, gun safe, gun case, lock box, or other device that is designed to be or can be used to store a firearm and that is designed to be unlocked only by means of a key, a combination, or other similar means.

the two ordinances violate both R.C. 9.68 and Article I, Section 4 of the Ohio Constitution.

{¶ 7} The Does requested a preliminary injunction of certain C.C.C. provisions that were amended or enacted by the ordinances, arguing that they violate Ohio's firearm-regulation preemption law codified in R.C. 9.68 and Ohio's constitutional provisions guaranteeing the right to keep and bear arms. After conducting an oral hearing, the trial court granted the Does' request for a preliminary injunction, thereby barring the city from enforcing certain C.C.C. provisions that were amended or enacted by the ordinances.[2] Delaware C.P. No. 23 CV H 02 0089, 27-30 (Apr. 25, 2023).

{¶ 8} The city appealed the trial court's preliminary-injunction order to the Fifth District. The Does filed a motion to dismiss the appeal on the grounds that the preliminary-injunction order did not satisfy the two conditions set forth in R.C. 2505.02(B)(4) to make it final and appealable and that the appellate court therefore did not have jurisdiction. The Fifth District granted the Does' motion to dismiss "for the reasons set forth in the motion." No. 23CAE040028 (5th Dist. Nov. 29, 2023).

{¶ 9} The city appealed the Fifth District's judgment to this court, and we accepted review of the following two propositions of law:

> Proposition of Law No. 1: The government may, under R.C. 2505.02(B)(4), immediately appeal orders preliminarily enjoining its laws.

---

2. Specifically, the trial court's preliminary-injunction order enjoins the city from enforcing C.C.C. 2303.05(D) and (E), 2303.14(D) and (E), 2323.11(N) and (O), 2323.191, 2323.23(E) and (F), 2323.32, and 2323.321. Delaware C.P. No. 23 CV H 02 0089, 29 (Apr. 25, 2023).

> Proposition of Law No. 2: An order enjoining enforcement of a statute or ordinance causes irreparable harm to the sovereign interests of the government, and is immediately appealable.

*See* 2024-Ohio-1228.

## II. Analysis

**{¶ 10}** Under the Ohio Constitution, courts of appeals are vested with jurisdiction as "provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district," subject to an exception not applicable here. Ohio Const., art. IV, § 3(B)(2). The statutory basis for the Ohio Constitution's "provided by law" jurisdictional language is found primarily in R.C. 2505.02.

**{¶ 11}** Typically, orders may be reviewed by appeal only following final judgment. *See State v. Glenn*, 2021-Ohio-3369, ¶ 10. However, R.C. 2505.02 provides limited circumstances under which interlocutory orders qualify as "final orders" and may be appealed immediately. *See Glenn* at ¶ 10. Relevant here is R.C. 2505.02(B)(4), which provides that an order granting or denying a "provisional remedy" is a final order when both of the following conditions are met:

> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

**{¶ 12}** As an initial matter, a preliminary injunction is a provisional remedy. A "provisional remedy" is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction." R.C. 2505.02(A)(3). Therefore, the preliminary-injunction order at issue here will qualify as a final and appealable order if it meets both conditions set forth in R.C. 2505.02(B)(4).

*A. The trial court's order granting a preliminary injunction satisfies*
*R.C. 2505.02(B)(4)(a)*

**{¶ 13}** The first condition set forth in R.C. 2505.02(B)(4)(a) asks whether the order "in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy."

**{¶ 14}** This court has held that an order meets this condition when "'"there was no further opportunity to petition the court for the remedy being sought,"'" [*State v. Muncie*, 2001-Ohio-93, ¶ 29,] quoting *Swearingen*[ *v. Waste Technologies Industries*, 134 Ohio App.3d 702, 713 (7th Dist. 1999)], and there existed nothing further for the trial court to decide with respect to the provisional remedy." *In re Special Docket No. 73958*, 2007-Ohio-5268, ¶ 29.

**{¶ 15}** The trial court in this case certainly made a definitive ruling when it determined that several of the newly amended or enacted C.C.C. provisions violated the Ohio Constitution and enjoined the city from enforcing those provisions. *See* Delaware C.P. No. 23 CV H 02 0089, at 20-25, 29 (Apr. 25, 2023). And although the trial court could theoretically revisit its order issuing the preliminary injunction, the practical result of its order prevents any further opportunity for the city to obtain a judgment denying the preliminary injunction. The trial court's order granting the Does' request for a preliminary injunction therefore satisfies R.C. 2505.02(B)(4)(a).

*B. The trial court's order granting a preliminary injunction satisfies R.C. 2505.02(B)(4)(b)*

{¶ 16} The second condition set forth in R.C. 2505.02(B)(4)(b) asks whether the city can obtain "a meaningful or effective remedy" if they are prohibited from immediately appealing the trial court's preliminary-injunction order. Considering the irreparable harm that is inflicted when a court wrongly enjoins a municipality from enforcing its duly enacted laws, that answer is undeniably no.

{¶ 17} The Ohio Constitution recognizes that "[a]ll political power is inherent in the people." Ohio Const., art. I, § 2. The people elect representatives at the federal, state, and municipal levels to make law and policy decisions for them that reflect their will. *See Black's Law Dictionary* (10th Ed. 2014) (defining "representative democracy").[3]

{¶ 18} The United States Constitution "establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). The Tenth Amendment to the United States Constitution provides, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The states have retained the "broad authority to enact legislation for the public good," what has often been called a "'police power.'" *Bond v. United States*, 572 U.S. 844, 854 (2014), quoting *United States v. Lopez*, 514 U.S. 549, 567 (1995).

{¶ 19} In Ohio, the Home Rule Amendment to the Ohio Constitution grants municipalities the "'broadest possible powers of self-government in connection

---

3. The dissent acknowledges that "it is the General Assembly that the people of this State have empowered to determine the jurisdiction of this State's lower courts," dissenting opinion, ¶ 31, but the dissent later undermines this rather basic constitutional observation with a bizarre statement opining on whether the General Assembly's laws "'reflect the will of Ohioans,'" *id.* at ¶ 41, quoting majority opinion, ¶ 27, claiming that elected representatives "cannot be held accountable by the voters" and that Ohio voters are being "discouraged . . . from expressing their will through voting," *id.*

with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest.'" *State ex rel. Morrison v. Beck Energy Corp.*, 2015-Ohio-485, ¶ 14, quoting *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212 (1948). Before the adoption of this amendment, municipalities had no inherent right of legislation and could not exercise power unless it was expressly granted or clearly implied by the General Assembly. *Bloom v. Xenia*, 32 Ohio St. 461, 465 (1877). After the adoption of this amendment, municipalities have the "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Const., art. XVIII, § 3.

{¶ 20} The Home Rule Amendment provides "'municipalities with "full and complete political power in all matters of local self government."'" *Newburgh Hts. v. State*, 2022-Ohio-1642, ¶ 24, quoting *Cincinnati Bell Tel. Co. v. Cincinnati*, 1998-Ohio-339, ¶ 20, quoting *Perrysburg v. Ridgway*, 108 Ohio St. 245, 255 (1923). Otherwise stated, the Home Rule Amendment confers on municipalities a sovereign interest in exercising police powers to enact legislation for the public good.

{¶ 21} Consistent with the division of power among the branches of government, "the ultimate authority to render definitive interpretations of the law has long been understood as resting exclusively in the judicial power." *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 33.[4] When a court is tasked with interpreting a statute or ordinance, that statute or ordinance cannot be enjoined unless it is unconstitutional. *Toledo v. State*, 2018-Ohio-2358, ¶ 17. A court's power to enjoin a statute or

---

4. The dissent asserts that allowing the city to immediately appeal the trial court's preliminary-injunction order in this case improperly infringes on Ohio's system of separation of powers and the judicial branch's power "to reign in laws that go too far." Dissenting opinion at ¶ 42. However, a quick review of the Ohio Constitution reveals that courts of appeals, like trial courts, are part of the judicial branch and are vested with judicial power. *See* Ohio Const., art. IV, § 1.

ordinance is further "circumscribed by the rule that laws are entitled to a strong presumption of constitutionality." *Yajnik v. Akron Dept. of Health, Hous. Div.*, 2004-Ohio-357, ¶ 16. "In determining the constitutionality of an ordinance, we are mindful of the fundamental principle requiring courts to presume the constitutionality of lawfully enacted legislation." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 38 (1993), citing *Univ. Hts. v. O'Leary*, 68 Ohio St.2d 130, 135 (1981), and *Hilton v. Toledo*, 62 Ohio St.2d 394, 396 (1980).

{¶ 22} Thus, in assessing whether the party appealing a trial court's preliminary-injunction order barring enforcement of a statute or ordinance would have a meaningful or effective remedy by an appeal following final judgment, an appellate court must presume that the appealing party has a meritorious argument that the statute or ordinance at issue is constitutional. Otherwise, R.C. 2505.02(B)(4)(b) would require appellate courts to resolve the merits of a case involving the constitutionality of a statute or ordinance *before* determining whether they have jurisdiction to hear that case.

{¶ 23} Chief Justice Roberts of the Supreme Court of the United States has recognized that "'any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012), quoting *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). The Court has stated that "[u]nless that statute is unconstitutional," an injunction would "seriously and irreparably harm the State, and only an interlocutory appeal can protect that State interest." (Footnote omitted.) *Abbott v. Perez*, 585 U.S. 579, 602-603 (2018).

{¶ 24} Additionally, courts across the country acknowledge that the harm to the government is the "'"inability to enforce its duly enacted [law]."'" (Bracketed text added in *OPAWL-Building*.) *Free Speech Coalition, Inc. v. Skrmetti*, 2025 U.S. App. LEXIS 771, *8 (6th Cir. Jan. 13, 2025), quoting *OPAWL-Building AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 785 (6th Cir. 2024),

quoting *Abbott* at 602, fn. 17; *see also Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) (irreparable harm found when a federal district court enjoined the State of Ohio from enforcing some of its ballot-access laws); *Doe v. Whitmer*, 2025 U.S. App. LEXIS 15361, *6 (6th Cir. June 20, 2025) (irreparable harm found when a federal district court enjoined certain Michigan government officials from enforcing amended provisions of Michigan's Sex Offender Registration Act); *Naples Pride, Inc. v. Naples*, 2025 U.S. App. LEXIS 17858, *6-7 (11th Cir. June 6, 2025) (irreparable harm found when a federal district court enjoined the City of Naples from enforcing its special-event ordinance); *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (irreparable harm found when a federal district court enjoined the State of Texas from effectuating the Texas Legislature's assigning the prerogatives of prison policy to the Texas Department of Criminal Justice).

{¶ 25} The dissent, however, takes a different view. Brushing aside any concern over the intrusion of sovereign interests, the dissent would instead have the city point to some other "specific, identifiable, individual interests," dissenting opinion, ¶ 37, that it has "actually suffered," *id.* at ¶ 43, for it to seek an immediate appeal of the trial court's preliminary-injunction order. In this case, the city enacted ordinances that its elected councilmembers and mayor believe—rightly or wrongly—will address gun violence in their city. A single trial-court judge— rightly or wrongly—found these ordinances facially unconstitutional and—with the stroke of a pen—enjoined the city from enforcing them. Finding this intrusion into the city's exercise of its constitutionally prescribed police powers as insufficiently harmful to merit an immediate appeal, the dissent would instead leave the enforcement of the city's duly enacted ordinances at the mercy of the trial docket of the judge who, by finding the ordinances to be *facially unconstitutional*, has already effectively "determined the action," as the dissent concedes, *id.* at ¶ 32, for the purposes of R.C 2505.02(B)(4)(a). Such a proposed remedy would not be "meaningful" or "effective" for the city under R.C. 2505.02(B)(4)(b).

{¶ 26} This court has held that absent the ability to appeal an order stemming from a provisional remedy, occasions may arise in which the appealing party "would have no adequate remedy from the effects of that order on appeal from final judgment. In some instances, '[t]he proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." (Bracketed text in original.) *Muncie*, 2001-Ohio-93, at ¶ 30, quoting *Gibson-Myers & Assocs. v. Pearce*, 1999 WL 980562, \*2 (9th Dist. Oct. 27, 1999).

{¶ 27} This appeal is about a court order enjoining the enforcement of certain provisions that were amended or enacted by two city ordinances, not an order enjoining the enforcement of a state law. However, it naturally follows that just as the General Assembly passes bills that reflect the will of Ohioans, the Columbus City Council passes ordinances that reflect the will of Columbus citizens. An order facially enjoining the enforcement of a duly enacted city ordinance therefore inflicts irreparable harm to the sovereign interests of that city, and an immediate appeal is necessary to provide "a meaningful or effective remedy" to that city, R.C. 2505.02(B)(4)(b).

{¶ 28} The trial court's prohibition on the City of Columbus's exercise of its police powers under the Home Rule Amendment, even on a temporary basis by a preliminary injunction, is a bell that cannot be unrung. R.C. 2505.02(B)(4)(b) is therefore satisfied, and the trial court's order granting the Does' request for a preliminary injunction constitutes a final order that can be immediately appeal.

### III. Conclusion

{¶ 29} Accordingly, we conclude that there is an immediate right of review when a lower court facially enjoins the enforcement of a duly enacted law. We reverse the judgment of the Fifth District Court of Appeals and remand this matter to that court for it to address the merits of the city's appeal.

Judgment reversed

and cause remanded.

_____

**BRUNNER, J., dissenting.**

{¶ 30} The courts of appeals in Ohio have "jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Ohio Const., art. IV, § 3(B)(2). The "provided by law" provision means that the General Assembly defines the jurisdictional parameters of the courts of appeals by statute. *See E.A.K.M. v. M.A.M.*, 2025-Ohio-2946, ¶ 10.

{¶ 31} The majority opinion blithely sets aside the General Assembly's "provided by law" constitutional authority and instead supplies what amounts to court-made legislation that grants municipalities the right to immediately appeal orders preliminarily enjoining the enforcement of municipal ordinances. We have no basis for making public policy, even if it involves the courts of this State, when it is the General Assembly that the people of this State have empowered to determine the jurisdiction of this State's lower courts. Because the majority has no basis in law for its holding, be it constitutional or statutory, this court lacks the authority to permit a municipality to immediately appeal an order granting a preliminary injunction that stays the enforcement of a municipal ordinance. Accordingly, I dissent.

*Appellate jurisdiction under R.C. 2505.02(B)(4)*

{¶ 32} A preliminary injunction, such as the one issued by the trial court enjoining appellants, the City of Columbus, Columbus City Council President Shannon Hardin, and Columbus City Attorney Zach Klein (collectively, "the city"), from enforcing portions of two gun-safety ordinances, is a "provisional remedy" as defined by R.C. 2505.02(A)(3). Under R.C. 2505.02(B)(4), an order granting a preliminary injunction may be immediately appealed if two conditions are met. First, "[t]he order in effect [must] determine[] the action with respect to the

provisional remedy and prevent[] a judgment in the action in favor of the appealing party with respect to the provisional remedy." R.C. 2505.02(B)(4)(a). I agree with the majority that the preliminary-injunction order at issue determined the action with respect to the provisional remedy. I disagree with the majority's resolution of the second condition—whether the appealing party would not be afforded a meaningful or effective remedy by appealing a final judgment in the action, *see* R.C. 2505.02(B)(4)(b).

{¶ 33} The General Assembly has specified that several categories of orders may bypass the analysis required under R.C. 2505.02(B)(4) and be immediately appealed. For example, an order that vacates or sets aside a judgment or grants a new trial is deemed a final and appealable order. R.C. 2505.02(B)(3). So is an order that certifies or denies certification of a class action. R.C. 2505.02(B)(5). The General Assembly has specifically provided for an immediate appeal of an order that enjoins a *state statute or regulation*. R.C. 2505.02(B)(8).[5] And R.C. 2505.02(B) provides that other specific categories of orders may be considered final and appealable. *See* R.C. 2505.02(B)(1), (2), (6), (7), and (9). Because the order at issue here does not fit into any of the categories of orders set forth in R.C. 2505.02(B)(1) through (3) and (5) through (9), we are required to perform the analysis under R.C. 2505.02(B)(4).

{¶ 34} The pivotal question here is whether the city would not be afforded a meaningful or effective remedy of the trial court's order granting a preliminary injunction without an immediate appeal. This is a question that can be answered

---

5. R.C. 2505.02(B) was recently amended to include as a new category of orders that are immediately appealable those orders enjoining a state statute or regulation. *See* 2024 Sub.H.B. No. 301 (effective Oct. 24, 2024). The amendment provides that "[a]n order restraining or restricting enforcement, whether on a temporary, preliminary, or permanent basis, in whole or in part, facially or as applied, of any *state statute or regulation*, including, but not limited to, orders in the form of injunctions, declaratory judgments, or writs," is considered "a final order that may be reviewed, affirmed, modified, or reversed." (Emphasis added.) *Id.* The General Assembly could have included municipal ordinances in this new category, but it specifically limited the application to *state* statutes or regulations.

only on a case-by-case basis. Instead, the majority creates a blanket rule and improperly writes a new category of orders into R.C. 2505.02(B).

*The trial court's preliminary-injunction order is not immediately appealable*

{¶ 35} According to the majority, any time a municipal ordinance is enjoined by an order, that municipality suffers an irreparable injury that necessitates an immediate right to appeal that order. Majority opinion, ¶ 27. But the test under R.C. 2505.02(B)(4)(b) is not a test of harms; it is a test of remedies. The balancing of harms and interests is for the trial court to perform before issuing a preliminary injunction. *See Rein Constr. Co. v. Trumbull Cty. Bd. of Commrs.*, 138 Ohio App.3d 622, 630-632 (11th Dist. 2000). And any time a court enjoins a statute or ordinance, the government will be able to claim that it suffers some kind of harm. *See Columbus v. State*, 2023-Ohio-195, ¶ 18 (10th Dist.). R.C. 2505.02(B)(4)(b) still requires a reviewing court to examine the harms resulting from the preliminary injunction and determine whether they can be sufficiently redressed without an immediate appeal.

{¶ 36} The city argues that the preliminary injunction is harmful to citizens because it causes confusion for gun owners about whether they need to comply with the ordinances and because the city cannot use the ordinances to protect citizens against preventable gun violence. So the proper question here regarding the appealability of the preliminary-injunction order is whether there is an effective mechanism for redress of these temporary harms after the trial court issues a final judgment.

{¶ 37} The majority opinion is devoid of explanation of the specific harms the city seeks to redress through an immediate appeal. The majority nonetheless reasons that the harm to citizens cannot be undone, like ""“[t]he proverbial bell [that] cannot be unrung,”"" majority opinion at ¶ 26, quoting *State v. Muncie*, 2001-Ohio-93, ¶ 30, quoting *Gibson-Myers & Assocs. v. Pearce*, 1999 WL 980562, *2 (9th Dist. Oct. 27, 1999). But whether the reasoning is a proverb or a fable, it

simply does not work here. The classic examples of courts considering whether a bell cannot be unrung relate to specific, identifiable, individual interests, such as disclosure of confidential information, invocation of the right against double jeopardy, and forced administration of medication. *See Preterm-Cleveland v. Yost*, 2022-Ohio-4540, ¶ 24 (1st Dist.). In *Muncie*, cited by the majority, the provisional remedy at issue was an order authorizing the administration of multiple drugs, forcibly if necessary, to a hospitalized criminal defendant to restore his competency to stand trial. *Muncie* at ¶ 3-4. This court recognized the "'particularly severe' interference with an individual's liberty interest . . . as well as the potential for serious and even fatal side effects" that might result from the trial court's provisional order. *Id.* at ¶ 32, quoting *Riggins v. Nevada*, 504 U.S. 127, 134 (1992). This court concluded that there is no meaningful or effective remedy that could be obtained through a later appeal once an order for forced administration of medication is carried into effect. *Id.*

{¶ 38} Medication cannot be ungiven, just like privileged material cannot be unseen. But laws can be tested, rewritten, or repealed. Municipal officials could decide not to enforce an ordinance, or they may enforce it imperfectly. In this case, the Columbus City Council demonstrated how pliable laws are when it passed Ordinance No. 0680-2023, which amended portions of the gun-safety ordinance that it passed two months earlier and postponed enforcement of part of the earlier ordinance for several months. The temporary harms claimed by the city are inherently diluted by the lawmaking process.

{¶ 39} And I am not persuaded as the majority appears to be by federal-court precedent that strains to recognize a generic harm in the inability to enforce duly enacted laws. The majority opinion quotes out-of-context *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977), for its position that any time a state law is enjoined, the State suffers irreparable injury. *See* majority opinion at ¶ 23. *New Motor Vehicle Bd.* involved one justice's order staying a

federal district court's judgment and was not an opinion of the full Court. Then-Justice William Rehnquist was determining whether a *final* judgment enjoining enforcement of a state law should be *stayed* pending appeal. The analysis required balancing the hardship of the parties seeking to enjoin the enforcement of a California law against the harm expected to be done to the State of California by the injunction, *see New Motor Vehicle Bd.* at 1352—a very different test than what we must consider under R.C. 2505.02(B)(4)(b). Then-Justice Rehnquist detailed the specific harms suffered by the State of California and then observed, "*It also seems to me that* any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (Emphasis added.) *New Motor Vehicle Bd.* at 1351. This one justice's supposition cannot be credibly or with intellectual honesty transmuted and used to override the limitations on appellate review set forth by the General Assembly in R.C. 2505.02(B)(4).

{¶ 40} And the additional federal cases cited in the majority opinion for the position that "courts across the country" recognize a generic harm to government when laws are enjoined, majority opinion at ¶ 24, suffer from the same flaws. These federal cases address injunction orders entered by federal district courts. Federal law recognizes a general right to appeal a district court's interlocutory order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions" to a federal court of appeals. 28 U.S.C. 1292(a)(1); *see also* 28 U.S.C. 1253 (United States Supreme Court has jurisdiction over appeals involving orders granting or denying an interlocutory or permanent injunction by a three-judge district-court panel). The analysis in these federal cases necessarily involves a balancing of the harms and interests of the parties. *See, e.g.*, *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) (performing a "balancing test" to determine whether a preliminary injunction—not an appeal—was warranted). Again, the test in this case—under Ohio law—is a test of remedies, not harms.

{¶ 41} Even if it were true that whenever a law is enjoined the will of the people is frustrated in a way that is intolerable even for a short time, such a declaration lacks needed context. The majority opinion rests on the belief that when the General Assembly legislates, the resulting laws "reflect the will of Ohioans." Majority opinion at ¶ 27. The will of Ohioans in regard to legislative acts is often best expressed in referendums and the power to propose new laws. *See* Ohio Const., art. II, § 1. ("the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote"). The will of Ohioans is not necessarily reflected in law when the elected representatives making the laws cannot be held accountable by the voters, when those representatives have no incentive to be responsive to the needs of Ohioans, and when voters are discouraged in a multitude of ways from expressing their will through voting. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 2022-Ohio-65, ¶ 151-157 (Brunner, J., concurring).[6]

{¶ 42} I expect it to be troubling to many that the majority opinion appears to abhor the idea that the stroke of a single judge's pen could temporarily enjoin a municipal ordinance that that judge has found to be unconstitutional. However, it is a "firmly established [and] an essential feature of the Ohio system of separation of powers" that the judicial branch—which includes trial-court judges and their

---

6. The majority opinion expresses ridicule that this dissenting opinion can on one hand apply the laws as written by the General Assembly (regarding jurisdiction of the lower courts of this State) and at the same time question the efficacy of the lawmaking process in Ohio. *See* majority opinion at ¶ 17, fn. 3. Our State's Constitution presumes that the legislature will not always do what the people want, because the people reserved the right to correct the legislature when the legislature does not reflect the people's will. *See* Ohio Const., art. II, § 1. Aside from referendum or citizen-initiated legislation, another reason the legislature may fail to do the will of the people is a structural one—caused by its refusal to follow basic instructions in the Ohio Constitution on how to apportion its own districts. Regardless of these weaknesses of the legislative branch, judges must continue to apply the law, even when they are critical of the activities of the branch that creates it. That is what this dissenting opinion does. The same cannot be said for the majority opinion, which does not follow any law of this State.

pens—is empowered and required to rein in laws that go too far. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 1999-Ohio-123, ¶ 13, *overruled on other grounds by State ex rel. Martens v. Findlay Mun. Court*, 2024-Ohio-5667, ¶ 3. Moreover, any infringement into the sovereign lawmaking powers of a municipality is temporally limited by the nature of the preliminary injunction. *See* Civ.R. 65(B); *Deyerle v. Perrysburg*, 2004-Ohio-4273, ¶ 15 (6th Dist.) (the primary goal of a preliminary injunction is to preserve the status quo during the pendency of the matter, even if the preliminary injunction causes a temporary delay in a party's ability to act).

{¶ 43} In total, the majority points to no specific harm actually suffered by the city in requiring it to wait until after the case is fully litigated to institute an appeal. Whatever that harm may be, it is not irretrievably lost by the implementation of the preliminary injunction. The city will still have a meaningful and effective remedy—it is simply delayed in obtaining that remedy until the trial is complete and a final judgment is rendered.

{¶ 44} But more importantly, the majority's rationale ignores the harms suffered by plaintiffs in cases like this if an unconstitutional law is imposed on them. As the majority notes, the city is entitled to a strong presumption that its ordinances are constitutional. *See* majority opinion at ¶ 21. Despite this strong presumption, the trial court concluded that "the plaintiffs appear[ed] likely to succeed" on at least two of their claims. Delaware C.P. No. 23 CV H 02 0089, 28 (Apr. 25, 2023).

{¶ 45} In my view, the most effective and meaningful way the city could have obtained a remedy for any harm suffered by the preliminary injunction was to see the case through to a trial on the request for a permanent injunction, which had been scheduled to begin on October 22, 2024. Delaware C.P. No. 23 CV H 02 0089, 4 (Dec. 28, 2023). If, following discovery and a full presentation of evidence, testimony, and argument, the trial court permanently enjoined the ordinances, an

appeal of that decision would provide a more complete record and more thorough factual and legal analysis for appellate-court review.

{¶ 46} There may be an instance when an order granting a preliminary injunction preventing enforcement of a municipal ordinance should be immediately appealable under R.C. 2505.02(B)(4) because the municipality cannot obtain effective or meaningful relief by appealing after a final judgment is entered. But the city has not made the case for it here. And until the General Assembly decides to create the same rule for immediately appealing orders preliminarily enjoining the enforcement of municipal ordinances as it did for state statutes and regulations, we must engage in the case-by-case analysis provided by R.C. 2505.02(B)(4). For these reasons, I respectfully and pointedly dissent.

_____

The Buckeye Institute, Robert Alt, David C. Tryon, Jay R. Carson, and Alex M. Certo, for appellees.

Zach Klein, Columbus City Attorney, and Richard N. Coglianese, Matthew D. Sturtz, and Aaron D. Epstein, Assistant City Attorneys, for appellants.

Dave Yost, Attorney General, Mathura J. Sridharan, Solicitor General, and Stephen P. Carney and Zachery P. Keller, Deputy Solicitors General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

James N. Kline, urging reversal for amicus curiae Ohio Council of Churches.

Baker Dublikar, James F. Mathews, and Brittany A. Bowland, urging reversal for amicus curiae Village of Scio.

_____